# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dr. Susan P. Schaming

**DEFENDANTS**
Widener University, Shawn M. Fitzgerd, Ph.D, Beth R. Glassman, and Grace Karmiol

**(b)** County of Residence of First Listed Plaintiff    Camden County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Alan B. Esptein, Esq.
Sepctor Gadon & Rosen, P.C.
1635 Market St., 7th Fl., Phila. PA 19103 (215) 241-8832

Attorneys *(If Known)*
Rocco P. Imperatrice, III, Esq.
Imperatrice Amarant Capuzzi & Bell
3405 West Chester Pike, Newtown, Sq., PA 19073

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Breach of Contract for Temporary Restraining Order and Preliminary Injunctive Relief

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   6/2/16

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:     17 Regency Court, Cherry Hill, NJ 08002

Address of Defendants: One University Place, Chester, PA 19013

Place of Accident, Incident or Transaction: Unknown

*(Use Reverse Side for Additional Space)*

Does this case have multidistrict litigation possibilities?          Yes ☐     No ☒

*RELATED CASE IF ANY*

Case Number:                          Judge                          Date Terminated

Civil cases are deemed related when yes is answered to any of the following questions:
1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court:          Yes ☐     No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes ☐     No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes ☐     No ☒

CIVIL: (Place :in *ONE CATEGORY ONLY*)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability - Asbestos
9. ☒ All other Diversity Cases
   (Please specify) Employment

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _ALAN B. EPSTEIN_ , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 8, Section 4(a)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☒ Relief other than monetary damages is sought.

Date: _6/2/16_          _____
                                          *Attorney at Law*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

Date: _6/2/16_          _____
                                          *Attorney at Law*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. SUSAN P. SCHAMING | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| vs. | ) | |
| | ) | |
| WIDENER UNIVERSITY, BETH R. | ) | |
| GLASSMAN and GRACE KARMIOL | ) | |
| | ) | |
| Defendants. | ) | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

     (a)    Habeas Corpus -- Cases brought under 28 U.SC. §2241 through §2255.     ( )

     (b)    Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

     (c)    Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2     ( )

     (d)    Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

     (e)    Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See revise side of this form for a detailed explanation of special management cases.)     ( )

(f)     Standard Management -- Cases that does not fall
        into any one of the other tracks.                        ( X )

Date _6/2/16_

_____

Alan B. Epstein, Esquire
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19107
Telephone: (215) 241-8888
Fax: (215) 241-8844
aepstein@lawsgr.com

*Attorneys for the Plaintiff,*
*Dr. Susan P. Schaming*

**DR. SUSAN P. SCHAMING**

   **Plaintiff,**

    **v.**

**WIDENER UNIVERSITY, BETH R. GLASSMAN AND GRACE KARMIOL**

   **Defendant.**

CIVIL ACTION

NO. _____

## COMPLAINT

 Plaintiff, Susan P. Schaming, Ph.D. ("Dr. Schaming"), by and through her attorneys Spector Gadon & Rosen P.C., brings the following action for injunctive relief and damages against Defendants Widener University (the "University"), Beth R. Glassman ("Glassman"), and Grace Karmiol ("Karmiol) and states in support thereof as follows:

## INTRODUCTION

 1. The present action is presented to preliminarily and permanently enjoin the Defendants, individually and in concert with Beth R. Glassman ("Glassman") , Grace Karmiol ("Karmiol")(hereinafter "the Individual Defendants") and Shawn M. Fitzgerald, Ph.D. ("Fitzgerald"), from proceeding to prosecute Dr. Schaming, a respected tenured educator, under the provisions of the University's Discrimination and Harassment Code instead of the less draconian and properly controlling provisions of the Widener University Faculty Handbook, the Faculty Council Bylaws and the tenure hearing procedures set forth in the Regulations of the American Association of Professors.

2.     In this Complaint, Dr. Schaming also seeks compensation for actual losses of compensation and benefits and requests awards of both compensatory and punitive damages for the outrageous conduct affected by Widener University and the individual defendants in scheduling and continuing to proceed with a hearing on June 6, 2016 despite the fact that they are well aware that the procedural processes by which they are proceeding against Dr. Schaming are improper and are labeling Dr. Schaming as a bigot.

## JURISDICTION & VENUE

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 (Diversity of Citizenship) and because the value of Dr. Schaming's claim exceeds $75,000, exclusive of interest and costs.

4.     Personal jurisdiction and venue are predicated upon 28 U.S.C. § 1391(b) and (c), since the Defendants reside and transact their affairs in the Eastern District of Pennsylvania and because the acts and occurrences giving rise to the claim alleged herein arose in the Eastern District of Pennsylvania.

## PARTIES

5.     Dr. Schaming is an adult individual and citizen of the State of New Jersey with her principal residence at 17 Regency Court, Cherry Hill, NJ 08002 who is employed as a tenured Associate Professor at Widener University.

6.     Defendant Widener University is a private, non-profit corporation, duly formed and existing under the laws of the Commonwealth of Pennsylvania with its principal address located at One University Place, Chester, PA 19013.

7.     Defendant Beth R. Glassman is an adult individual who resides in the Commonwealth of Pennsylvania and has a principal place of business located at One University

Place, Chester, PA 19013. At all times relevant hereto, Ms. Glassman was employed by Defendant Widener as the Chief Human Resources Officer.

8.     Defendant Grace Karmiol is an adult individual who resides in the Commonwealth of Pennsylvania land has a principal place of business located at One University Place, Chester, PA 19013. At all times relevant hereto, Ms. Karmiol was employed by Defendant Widener as the Director of Labor Relations and Human Resources Manager.

## FACTUAL BACKGROUND

9.     Dr. Schaming is currently a fully tenured Associate Professor employed by Widener University where she has enjoyed great success teaching at the undergraduate and graduate level for the past eight (8) years. She currently serves as the Coordinator of Graduate Counselor Education, Educational Foundations and Home School Visitor Programs and an affiliate of the University's Center for Education. .

10.     Prior thereto, she held the position of Director of Undergraduate Education and Counseling Programs within the School of Education, Hospitality and Continuing Education.

11.     Until 2014, Dr. Shaming enjoyed an excellent reputation within and outside the University and had not been the subject of previous disciplinary action or any formal complaints by the University's administration or fellow faculty members.

12.     In 2014, Dr. Fitzgerald was appointed as the Dean of the Widener University School of Education, Hospitality and Continuing Studies.

13.     Immediately thereafter, a personality clash between Dr. Schaming and Dr. Fitzgerald developed, resulting in Dr. Shaming's removal from her position as the Director of Undergraduate Education and Counseling Programs without cause and for no reason other than Dr. Fitzgerald's apparently displayed, personal animus toward Dr. Schaming.

14.     In furtherance of his efforts to intentionally harm the reputation of Dr. Schaming and have her removed from her tenured position at Widener, Dr. Fitzgerald directed Defendant Glassman, Widener University's Chief Human Resources Officer, to issue a letter without detail pursuant to Section 2.8 of the Faculty Handbook which advised that termination proceedings relative to Dr. Shaming's Faculty status are being considered as a result of her history of inappropriate behavior which includes: bullying junior faculty members, insubordination with respect to superiors [*i.e.* Fitzgerald], and illegal recording of meetings with superiors without the other's consent [*i.e.* again Fitzgerald]. *See* Ms. Glassman's correspondence dated November 16, 2015, attached as Exhibit "A".

15.     Additionally furthering Dr. Fitzgerald's scheme to have Dr. Schaming terminated from her tenured faculty position, Defendant Glassman's letter informed Dr. Schaming that she was being place on administrative leave pending the investigation of a clearly false and patently frivolous complaint by a student of alleged racial discrimination and invited Dr. Schaming "to step down and resign your faculty status." Exh. "A".

16.     On November 18, 2015, Dr, Fitzgerald wrote to Dr. Schaming further threatening dismissal for cause proceedings against her "under Section 2.8.4 of the Faculty Handbook" based upon the same three factors listed by Ms. Glassman just two days earlier. Dr. Fitzgerald's November 18, 2015 letter is attached as Exhibit "B". Dr. Fitzgerald's letter clearly differentiated between the proceedings under Section 2.8.4 of the Faculty Handbook and the frivolous complaint under the Faculty Member Discrimination and Harassment Code ("the Code"). *See* Exhibit "B", paragraph 2.

17.     Following an unnecessary investigation and demonstrating the patently frivolous nature of the student complaint, on January 11, 2016, Dr. Fitzgerald advised Dr. Schaming "that

the allegations of discrimination and harassment as set forth in the formal complaint against you, if proven, do not provide sufficient information upon which a formal judicial panel could find a violation" of the Code and ordered her "immediately reinstated to [her] faculty position." *See* Dr. Fitzgerald letter dated January 11, 2016, attached hereto as Exhibit "C".

18.    Again, citing to the same three elements contained in the November 16, 2015 letter that he had directed Ms. Glassman to send earlier, Dr. Fitzgerald then admonished Dr. Schaming that her behavior "must be corrected immediately" or "dismissal procedures or lesser sanctions may be applied." Exh. "C", paragraph 3.

19.    Not satisfied with threatening Dr. Shaming with further action, Dr. Fitzgerald, with the active aid of Defendants Glassman and Karmiol, thereafter solicited and collected eight statements from individual faculty members (all dated January 14, 2016 and January 15, 2015) filled with (a) undated alleged actions by Dr. Schaming causing disruption in the workplace, (b) unspecified physical threats made by her, (c) claims that she was "unwell" and (d) unrealized fears of retaliation. None of these statements averred that Dr. Schaming alleged conduct was the result of any class-based discriminatory animus on the part of Dr. Schaming.

20.    Even though the solicited criticisms of Dr. Schaming were based upon her averred volatile actions and threats and not based upon any class-based discrimination, on January 15, 2015, the collective conspiratorial actions of Dr. Fitzgerald, Defendant Glassman and Defendant Karmiol resulted in a letter to Dr. Schaming informing her that she was again being placed on leave with no access to the University facilities or property.  However, this time the leave was not under the proper provisions of the Faculty Handbook, the Faculty Council Bylaws and the AAUP 1982 Recommended Institutional Regulations on Academic Freedom and Tenure, but rather under the draconian procedures "pertaining to violations of section 4(f), Physical Assault

and 4(g), Bullying and Intimidation" of the Code" The January 15, 2016 letter is attached as Exhibit "D".

21.     The Code is not the proper basis to charge or prosecute Dr. Schaming for disruptive behavior which is not based on invidious, class-based discrimination or harassment.

22.     Specifically, Section 1 of the Code restricts its applicability to only actions arising from class-based discrimination and not other indiscriminant acts of physical assault, bullying or intimidation and provides in pertinent part that:

> This Code **shall apply** to all alleged claims of discrimination and/or harassment brought against Faculty Members...by any member of the University community...**on the basis of sex, gender, pregnancy status, age, race, national origin or ethnicity, religion, disability, status as a veteran of the Vietnam era or other covered veteran, sexual orientation, gender identity, marital status or genetic information.**

*See* Faculty Member Discrimination and Harassment Code, attached as  Exhibit "E",

p. 1, Section 1

23.     Because of the invidious nature of class-based discrimination, the provisions of the Code permits a more expeditious process with less fairness safeguards and is controlled completely by the Office of Human Resources.

24.     Confirming the unfairness of this process, the Code specifically allows the Office of Human Resources to control the disciplinary process, decide on all initial measures to be implemented (Code Section 7, pp, 19-24), determine whether judicial resolution (disciplinary action) is appropriate, assess whether and how an investigation should be undertaken (Code Section 9, p. 24), and determine whether the matter should proceed to judicial resolution under Code Section 10.[1]

---

[1] It is important to note that while the Respondent can identify witnesses, the investigator controls the manner of the investigation and has sole discretion regarding the witnesses

25.     Additionally under the Code's mandated procedures, if the matter proceeds to a formal judicial hearing, a panel of three members is chosen by the Chief Human Resources Officer to resolve all issues.  While representative advisors may be present, they may not participate in the proceedings and the Respondent to the charges are not granted the right to question complaining witnesses, but can only submit questions which need not be asked (Code Section 10(d)(vii), p, 36-37).

26.     Further, sanctions including revocation of tenure shall be determined by the Provost (Code Section 10(d)(x)) with a very limited final right of appeal to the President (Code Section 10(e).

27.     Contrary to the extremely limited rights a faculty member has in situations where the allegations involve discriminatory animus as aforesaid under the Code, the procedures for removal of a tenured rank faculty member for "cause" are mandatorily governed by the provisions of the Widener University Faculty Handbook ("Handbook")(attached as Exhibit "F"), the 1983 Widener University Faculty Council Bylaws (Main Campus-last revised 2006) ("Bylaws") (attached as Exhibit "G") and the American Association of University Professors Recommended Institutional Regulations on Academic Freedom and Tenure ("AAUP Regulations") (attached as Exhibit "H").

28.     Under Section 2.8.4 of the Handbook, dismissal for cause is defined as "a severance action by which Widener University terminates the appointment of a faculty member for adequate cause."  The procedures for termination mandate due process through the following procedural steps outlined in Section 2.8.4.1, Sections 5.08 and 5.11 of the Bylaws and the AAUP Regulations (Section 5):

---

interviewed.  Moreover, the witnesses not interviewed will not be permitted to testify at any judicial hearing convened thereafter. *See* Code,  Section 10, p.32.

- The accused faculty member is first permitted to meet with the Provost and other appropriate administrators to informally discuss the charges and a possible mutually agreeable resolution before a final recommendation is made

- If the matter is not resolved, the next step is an informal inquiry made by the Faculty Council Faculty Affairs Committee in accordance with the AAUP Regulations Section 5(b)

- The charged faculty member then must receive written notice from the Provost of the grounds upon which a recommendation to the President for dismissal is being made

- A hearing before the Faculty Promotion, Tenure and Academic Freedom Committee (Bylaws, Section 5.11(a)), including a full prehearing conference, service of notice of the hearing with specific charges at least twenty (20) days prior to the hearing, assistance of counsel, the right to cross examine all witnesses, and a decision rendered in writing

- The burden of proof that adequate cause exists rests with the institution and is satisfied only by clear and convincing evidence (as opposed to the preponderance standard under the Code)

- If the Committee concludes that adequate cause exists, presentation to the President to make a recommendation to determine the appropriate sanction

- If dismissal or other severe sanction is recommended by the President, on request of the charged faculty member, review by the University's Board of Trustees who will review the record and provide opportunity for argument

29.     Despite the clear non-applicability of the Code to the averred complaints against Dr. Schaming, the University, through Dr. Fitzgerald, Defendant Glassman and Defendant Karmiol ordered an investigation to be undertaken in accordance with Section 9 of the Code in an intentional effort to deprive Dr. Shaming of the due process procedures afforded under the Handbook, Bylaws and the AAUP Regulations.

30.     Accordingly, the investigation undertaken by Daniel C. Swinton of the NCHERM Group, LLC resulted in a seriously flawed "EXTERNAL INVESTIGATION REPORT" (the "Report") dated April 15, 2016 (attached as Exhibit "I" ) based on the unsupported and superficial allegations of anonymous witnesses who were identified with inconsistent numerical

8

identifiers in strangely constructed categories of alleged and improperly placed violations of the Code".

31.     In a meandering polemic regarding Dr. Schaming's averred behavior over unspecified periods of time, the Report was unexplainably biased as reflected by, *inter alia*, the following glaring deficiencies which were brought to the attention of University Counsel by Dr. Schaming's attorney in a letter attached hereto as Exhibit "J":

- The relating of events and behaviors that clearly do not and could not deviate from the standards of behavior included in the Code [Report, pp. 6-7] while professing that the investigator, confusingly and without apparent support, "erred on the side of over-inclusion to provide a more detailed picture of the landscape, but also to ensure nothing was left out due to the anonymized nature of the report." Report, page 4.

- The inclusion of hyperbolic remarks of unidentified "witnesses" throughout.

- The complete lack of any supporting or confirming documentation regarding the allegations made while improperly concluding that the allegations against Dr. Schaming were "near-universal and significant concerns". Report, p. 6.

- The complete failure to document dates or places that the superficially described alleged actions by Dr. Schaming.

- The inclusion of historical events occurring years before that had no actual or temporal relevance to the averments of the alleged complaining witnesses. Sections 1, pp. 8-13; Section 2, subsections A and B, pp.13-18; Section 5, pp. 27-28; Section 7, subsections A-C, pp. 30-36; Section 9, subsections A and B, pp.38-42; Section 10, pp. 42-47; Section 11, pp.47-48.

- The complete lack of any complaint formally made contemporaneous to the events that allegedly give rise to the need for an investigation.

- The complete failure to include identification of or even details from the alleged formal complaints that gave rise to the ordered investigation. Report pp. 7-8.

- The inconsistency throughout the Report in the non-identification of most witnesses making allegations of physical and psychological attacks by Dr. Schaming while identifying by name some witnesses who were allegedly the most fearful of retaliation by Dr. Schaming.

- The inclusion of rumor, innuendo and hearsay throughout a Report that is intended to resolve whether Dr. Schaming should be the subject of career-threatening discipline.

- The relating of directly contradictory allegations by witnesses without any attempt to reconcile those contradictions.

- The superficial and often confusing reconstruction of undated events without specification of possible witnesses posited in the Report as supporting the charges of bullying and harassment made anonymously against Dr. Schaming.

- The complete failure to adjudicate the credibility of witness statements even when the statements of Dr. Schaming's accusers were strongly brought into question by other witnesses.

- The apparent non-consideration that the two main antagonists had been the targets of bullying adjudications in the recent past and the complete failure of the Report to reflect on whether the ordered disciplines against them were of any consequence in their allegations against Dr. Schaming. Report, p.16.

- The casual mention of the previous investigated charge brought by student against Dr. Schaming while utterly failing to Report that the charge was baseless and should not have prompted the investigation ordered by Dean Fitzgerald.

- The complete failure to confirm the alleged emotional states of witnesses who claimed to be suffering from extreme degrees of distress resulting from the actions of Dr. Schaming or whether they had sought or received any treatment for that alleged emotional distress.

- The complete failure to discuss that Dr. Schaming had not been the subject of discipline in the past.

- The inclusion of allegations of an alleged "videotaped" meeting without even exploring the ability of any individual to make such a surreptitious recording. See Section 4, pp.25-27.

- The frequent incoherent sentence structures and insertions of incongruous statements (*see e.g.* the reference to a "Stephany" near the bottom of page 3).

- Including in the Report statements from witnesses making unqualified diagnoses of Dr. Schaming's alleged mental state in a manner suggesting acceptance and agreement with such untenable psychological conclusions.

- The confusion engendered by the changing of witness numbers from section to section throughout the Report so as to suggest that the number of witnesses

providing adverse comments about Dr. Schaming were greater than the very few individuals providing uncomplimentary information about her to the interviewer.

- The numerous descriptions of co-worker interactions with Dr. Schaming properly characterized by her as "the behavior of petulant middle-schoolers and adolescent mean girl words, not a group of women who are skilled to engage in discourse, disagree and move forward..." Report, p. 47.

- Perfunctory comments about illusory threats of tenure denial without relating even one instance where such alleged threatened action had ever been taken by Dr. Schaming. Section 5, 27-28.

- The failure to identify by name even those witnesses who were supportive of Dr. Schaming's professionalism and abilities in sharp contrast to the handful of apparent accusers even though such supportive witnesses would have no reason to fear retaliation by Dr. Schaming. Report, pp. 45-47.

- The complete absence of any confirmation that the actions being taken against Dr. Schaming were merely the result of a strong personality conflict between Dr. Schaming and Dean Fitzgerald. Report, 48-50.

- The inconsequential review of nicknames given to members of the administration that were never identified as being employed in the presence of the named target or used in open forums Report, pp. 35-36.

32    Moreover, the Report contained no actual witness statement that would permit Dr. Schaming to determine who her accusers were.

33.    The Report further did not reflect that any alleged action taken or conduct ascribed to Dr. Schaming was based upon a discriminatory animus as required by the Code.

34.    Reflecting Dr. Shaming's stellar record of teaching and service to the University, on the very same day the flawed investigative Report was presented, Dr. Schaming's tenured appointment to the position of Associate Professor of Education in the School of Education, Hospitality and Continuing Studies was renewed with an increase in base pay *via* a letter authored by the President of the University, Julie E. Wollman, Ph.D. A copy of the President's letter, signed and returned on April 19, 2016 is attached as Exhibit "K".

35.    Notwithstanding her renewal, the obvious flawed report and the apparent

impropriety of proceeding to charge Dr. Schaming under the Code, on May 6, 2016, Defendant Karmiol communicated her "threshold determination that the allegations [in the report] provide sufficient information upon which a panel or external adjudicator could find a violation" of the Code. See Ms. Karmiol's correspondence attached hereto Exhibit "L".

36. Defendant Karmiol further reported that "based upon the nature and severity of the allegation, I am referring the case for a formal judicial hearing." Exhibit "L".

37. Seventeen (17) days later, Defendant Karmiol first provided a Notice of Hearing to take place on June 6 and 7, 2016 under the Code procedures to determine sanctions including termination of tenure citing only the text of two Code provisions (Section 4(f)-Physical Assault and Section 4(g)-Bullying and Intimidation), the flawed allegations in the investigative Report and the unspecified allegations by faculty and staff that "pertain to a series of specific incidents as well as overarching culture and work environment within the school." See the letter of Grace Karmiol dated May 23, 2016, attached hereto Exhibit "M".

38. That letter contained no allegation that any of Dr. Schaming's summarily averred actions were based on requisite discriminatory animus.

39. In keeping with the apparent "rush to justice" and in response to the earlier protests of counsel for Dr. Schaming that the process was procedurally flawed, the following pre-hearing actions were taken by the University through Defendant Karmiol and Defendant Widener's counsel:

- On May 26, five weeks after the flaws in the Report were highlighted
by counsel for Dr. Schaming, Defendant Karmiol for the first time provided "witness statements" prepared by the investigator Daniel Swinton. See the letter of Ms. Karmiol dated May 26, 2016 attached as Exhibit "N";

- On May 31, 2016, less than the time mandated in the Code,
Ronald A. Amarant attached the eight written statements solicited by Dr. Fitzgerald, Defendant Glassman and Defendant Karmiol on January 14, 2016 and January 15, 2016 to initiate the

process against Dr. Schaming. See the email from Mr. Amarant dated May 31, 2016 and its attached statements attached as Exhibit "O";

- On May 31, 2016, again less than the proscribed time required in the Code, Defendant Karmiol delivered to Ms. Schaming the approved list of witnesses that would be called by the University at the hearing. See letter from Grace C. Karmiol dated May31, 2016 and attached hereto as Exhibit "P"; and

- On June 1, 2016, a timely request for the rescheduling of the hearing was rejected without any good cause for the denial. *See* the request and denial attached collectively as Exhibit "Q".

## COUNT I
## BREACH OF CONTRACT
### [against Defendant Widener]

40.     Dr. Schaming restates each and every allegation contained in the preceding paragraphs in this Complaint as though each were fully set forth at length herein.

41.     Pursuant to the terms of her current contract of employment (Exhibit "H"), Dr. Schaming is compensated as a tenured Associate Professor at a base annual salary of $65,110.00 together with health, retirement and other benefits in exchange for her performing professorial and administrative duties for the University.

42.     The terms of her employment as a tenured professor are governed by the Faculty Handbook, the Faculty Council Bylaws, and the AAUP Regulations as more particularly described above.

43.     Dr. Schaming's tenured appointment at the University is therefore contractual in nature and constitutes a valid and enforceable agreement supported by adequate consideration.

44.     The University has breached and continues to breach the contract in place between it and Dr. Schaming by engaging in the conduct described in this Complaint, including but not limited to, the pursuit of her termination according to the improper, restrictive internal procedures.

13

45.    Dr. Schaming has no adequate remedy at law for the University's conduct since Code procedure will deny her the opportunity to adequately protect her tenured position within the University.

46.    Unless restrained preliminarily and permanently, the University will continue to violate Dr. Schaming's rights by proceeding with the June 6th adjudication according to the Harassment Code procedures, which provide her with little to no opportunity to present a defense to the charges pending and places her in danger of improperly having her tenured position taken from her without cause and effectively be denied other academic appointments for the remainder of her working life once branded by the Universities actions in branding her as person who discriminates against person on an invidious class basis.

47.    In addition to her regular salary and benefits package Dr. Schaming's status as an Associate Professor has afforded her the opportunity to engage in supplemental teaching engagements at the University which have earned her approximately $40,000 annually.

48.    As a direct and proximate result of the University placing Dr. Schaming on paid leave during the pendency of the disciplinary investigation and formal adjudication under the Harassment Code, she has been precluded from engaging in her supplemental teaching engagements.

49.    Moreover, as a direct and proximate result of the University's breach of her employment contract she will continue to suffer actual damage in the form of lost, future earnings since she will continue to be forced to forego her supplemental teaching engagements.

## COUNT II
## DEFAMATION

### [Against All Defendants]

50.　　Dr. Schaming restates each and every allegation contained in the preceding paragraphs of this Complaint as though each were fully set forth at length herein.

52.　　Prior to the inception of the charges brought against Dr. Schaming and continuing through the present, Dr. Fitzgerald, Defendant Glassman and Defendant Karmiol solicited from persons employed by the University as well as other persons who had professional relationships with Dr. Schaming information about her character and demeanor, implying that their inquiry was linked to proceeding against her by Widener University.  Upon information and belief, Defendants made these solicitations through making false statements about Dr. Shaming .

53.　　The Defendants knew that these statements about Dr. Schaming were false and/or acted in reckless disregard of their falsity.

54.　　The actions of the individual defendants, acting under the color of their respective positions within the University and for individually based motives and animus towards Dr. Shaming, solicited several University faculty members to disparage Dr. Schaming (copies of the statements of the solicited individuals are attached hereto) advising that charges were being brought under the Code thereby damaging her reputation in the eyes of members of the University community by implying that she had engaged in unlawful conduct based upon discrimination.

55.　　The actions of the individual defendants, as aforesaid, through the investigator Daniel Swinton who was investigating with an earlier charge that was subsequently dismissed, advised students that Dr. Schaming was facing additional charges that would prevent her temporarily or permanently from teaching the following semester beginning in January 2016,

thereby damaging her reputation by implying that she had engaged in unlawful conduct based upon discrimination.

56. The actions of the individual defendants, acting under the color of their respective positions within the University and for individually based motives and animus towards Dr. Shaming , in contacting  Dr. Andrew Shim who was teaching at another University to solicit a statement of an event that occurred in 2010, and suggesting that serious charges and Code violations were being brought against Dr. Schaming, thereby damaged her reputation by implying that she had engaged in unlawful conduct based upon discrimination.

57. The actions of openly pursuing actions under the Code, as aforesaid, falsely implied to the University community and others that Dr. Schaming was engaging in unlawful discrimination.

58. The Defendants' actions have been affected without privilege, justification or cause.

59. The actions of the Defendants, as aforesaid, were willful, malicious and without reason and in reckless disregard of Plaintiff's rights.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

### [Against Defendants Glassman and Karmiol]

60. Dr. Schaming restates each and every allegation contained in the preceding paragraphs of this Complaint as though each were fully set forth at length herein.

61. By their actions in pursuing charges against Dr. Schaming that they knew to be false under the draconian procedures of the Code, including her placement on leave status, that they knew did not apply to the alleged misconduct of Dr. Schaming, the individual defendants

have engaged in purposeful actions to interfere with the contractual relationship between Dr. Schaming and the University.

62.     The individual Defendants had no privilege or justification in engaging in such unlawful actions and have cause Plaintiff to suffer actual damages including loss of compensation and physical injuries arising from extreme emotional distress.

63.     The actions of the individual defendants, as aforesaid, were willful, malicious and without reason and in reckless disregard of Plaintiff's rights.

**WHEREFORE,** Dr. Schaming respectfully requests that this Court to grant the following relief

1.     Enter a Temporary Restraining Order from proceeding with the planned formal hearing under the Code scheduled to commence June 6, 2016;

2.     Enjoin the University from denying Dr. Schaming from engaging in her paid supplemental teaching engagements while she is on paid leave;

3.     Award to Dr. Schaming appropriate sums for compensatory damages for loss of compensation and benefits as set forth herein against each defendant;

4.     Award to Dr. Schaming appropriate sums for compensatory damages for pain and suffering, emotional distress and a loss of life's pleasures as set forth herein against each defendant;

5.     Award to Dr. Schaming punitive damages in an amount appropriate to the willful and malicious misconduct of the defendants as set forth herein against each defendant;

6.     Award to Dr. Schaming reasonable attorneys' fees and actual costs of litigation; and

7.    Grant all other relief that is just and proper under the circumstances.

Respectfully Submitted,

/s/ *Alan B. Epstein*

Alan B. Epstein (I.D. No. 2346)
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888
(215) 241-8844 (fax)

*Attorney for Dr. Susan P. Schaming*

Dated: June 2, 2016